May it please the Court, I am Neil Netanel, representing Plaintiff and Appellant Seven Arts Filmed Entertainments. Defendant Haramount Pictures asked this Court to adopt an exception to the General Statute of Limitations rule that would time-bar authors from enforcing their copyrights to an unprecedented extent. Haramount's proposed exception is unprecedented in this Court and unprecedented in any other Court. The General Rule for Statute of Limitations for continuing copyright infringements is that the limitations period begins to run three years prior to filing the lawsuit and thus does not bar claims for continuing copyright infringements that take place after that date. In two cases, in Zweil and al-Mohamed, this Court has recognized and applied a narrow exception to the General Rule when the plaintiff brings an action for declaratory judgment that plaintiff is a co-owner of the copyright and the defendant plainly and expressly repudiates that claim by insisting that the defendant is the sole owner of the copyright. That is not the case here? That is not the case here. Why is it? Because, first of all, that is not an action for declaratory judgment on the issue of co-ownership. This is a claim for infringement. And Paramount… But based on the idea that Seven Arts owns and, pardon me, that Seven Arts owns it and Paramount doesn't. Yes, Your Honor, and… The basis of the claim for infringement is ownership. The basis of any, first of all, any copyright infringement claim requires that the plaintiff establish that the plaintiff owns the copyright. Well, yes, but sometimes copyright claims for infringement are because they've copied some original features of the copyrighted property. Right? This isn't that. This is a claim as to who should be getting the fees from the movies. Exactly, Your Honor. This claim… There's no copying of anything. Well, Paramount is distributing the motion pictures to the public, which is one of the exclusive rights of the copyright owner. If Paramount does not have the right to do that, then Paramount is infringing the copyright. But you're absolutely right that there is an ownership dispute, but the dispute regarding the underlying ownership of the copyrights in this case is between Seven Arts and Content Media, a third party, not between Seven Arts and Paramount. So Paramount is essentially defending by saying, we're not infringing your copyright because this third party, Content Media, is the true owner of the copyright. And we are the licensees, Paramount's the licensees from Content. Exactly. Paramount is a licensee from Content. So they're exhibiting Content's ownership as the basis of their action. Correct. Correct. Contrary to Paramount's position, there is not an express repudiation of ownership exception to the general rule any time an infringement claim turns on the issue of ownership, and there is a quote-unquote close relationship between the parties. There's no exception in this court. Before you get into that aspect, do you concede that under Zewail there was a repudiation here? No, I do not, Your Honor. In every single case in Zewail, the repudiation was on behalf of a party that asserted that it itself was the owner of the copyright, not that some third party like Content was the owner. Then we have to look at the cases out of the Sixth Circuit and the Second Circuit, do we not? Well, certainly Paramount invites this court to look outside of our circuit to consider other cases. But even in those cases, in every single case. You have to concede there's no controlling precedent in this circuit on this point, is there? Well, Zewail did state, and it's arguably in dicta, but Zewail did in Zewail recall that the claim was a claim for an action for declaratory judgment on the issue of co-ownership, and the Zewail court expressly stated, distinguished between claims for infringement and actions for declaratory judgment, and stated in holding that the plaintiffs under that case were time-barred in their action for declaratory judgment, the court stated because they, the plaintiffs in Zewail, have no infringement claim, we cannot identify an asserted right of plaintiffs that can withstand the statute of limitations. So in Zewail, again, this is arguably in dicta because the plaintiffs in Zewail brought a claim for declaratory judgment, not infringement, but Zewail seemed to base its finding, its willingness to apply a narrow exception to the general rule for the reason that that case did not involve a claim for infringement. Rather, it involved a claim for declaratory judgment of co-ownership, and a co-owner cannot infringe another co-owner's copyright, simply it has to share the profits from the work with the co-owner. Further, even outside this court, in the other circuits, every single case, every single case that Paramount cites in support of its proposed expanded exception involved a direct conflict between the parties regarding which of them was the author, or between which of them owned the copyright. Why does that matter? Why does it matter if there's a licensee or if they're down the line? Yes, there are four reasons why this court should not extend the express repudiation of ownership exception to cases where like Paramount, where Paramount is a downstream licensee and not the rival claimant of the copyright. First of all, to do so would certainly go beyond Ninth Circuit precedent and not be contrary to Ninth Circuit precedent as evidenced by the Zewail case and the other cases. Secondly, it could. Wait a minute, your first reason is that we haven't said it before? We don't have any contrary authority? Well, again, Zewail, we can think about whether it's dicta or holding, but certainly in every single Ninth Circuit case that has applied that rule, the case has involved an action for declaratory judgment, not for infringement. And the only two courts, Zewail and Omohama, that have actually applied the rule, have been cases of actions for declaratory judgment on the issue of co-ownership, not even establishing sole ownership. Is the answer to my question yes, that your first reason is that we haven't done it before? Yes, this court has not done this before. That's the first reason we shouldn't do it. What's the second reason? The second reason is that it could well lead, both in our case and in other cases, to an anomalous result. So let's say that the plaintiff first decides to sue its rival plaintiffs over who actually owns the underlying copyright. Your content. Your content, right. And let's say that the plaintiff prevails in that claim. Well, under Paramount's proposed rule, if the downstream licensee has expressly repudiated the copyright more than three years before the time that the plaintiff then sues the downstream licensee, the plaintiff is then forever barred from bringing an infringement claim against the licensee. Content is the one who repudiated Seven Arts' ownership in the Canadian court, correct? Correct. Content repudiated. So let's just forget your second reason. Let's go to your third reason. Because it doesn't make you. Your third reason says the plaintiff wins. Seven Arts wins. And then Paramount repudiates. That's not the case here. Oh, I'm sorry. I didn't understand your question. No, Paramount claims that it also repudiated. Paramount claims that the Seven Arts, in this case, in 2005, when it initially sued Content's predecessor, sent letters to Paramount informing Paramount that it was suing to establish that it owned the copyright and not Content's predecessor. And Paramount argues that this refusal then to abide by Seven Arts' demand that Paramount pay its royalties to Seven Arts rather than to Ken West, which was Content's predecessor, amounts to a plain and express repudiation of Seven Arts' ownership. So in this case, yes, Paramount does claim that it expressly repudiated ownership. And that leads to a possibly anomalous result. So if Seven Arts prevails against Content, it establishes that it owns the copyright. It's then time-barred from suing Paramount, the putative licensee from Content. But your client holds the keys to that, right? Because your client could initiate the action sooner against anybody who's claiming ownership, right? Well, conceivably could, but copyrights, and this leads to the third point, which is that copyrights are infinitely divisible and freely alienable. Particularly in the motion picture industry, they are sliced and diced into various small slices. The chains of title more resemble a spider's web than any vertical line. The implication of that ruling would be, if you say Seven Arts could have sued Paramount, well, what about all the other, there could be dozens of possible putative licensees that pop up from a rival claimant. Could it possibly, to my mind, it would work an injustice and undermine the enforcement of copyrights. Tell us about this Canadian litigation. What was going on there? Yes, Seven Arts fought very hard, actually, to bring its action in the District Court of Central District of California, not in Canada, but it had a joint venture agreement with Canwest, and under the terms, or there's a question whether or not that was an enforceable agreement, but at least had a heads of agreement, which had a provision which required that any dispute under the agreement had to be heard in Canada. Canwest was a Canadian company. So the District Court, Central District of California, essentially removed the action to Canada. It required Seven Arts to bring the action to Canada. That was not Seven Arts' doing. You say the Federal District Court removed the action to Canada? That doesn't make sense. Well, it stayed the action. It required, it said under this contract, the dispute between Seven Arts and Canwest had to be heard in Canada. There was a provision in the agreement that provided that. So the Central District said, well, we're not going to hear this case. You've got to go to Canada. We'll stay this action. You don't have to go to Canada. You filed in Canada, so you stayed here and you filed in Canada. Right. Seven Arts then filed in Canada, but it fought very hard. It got to Canada and all of a sudden realized that there's a rule in the Canadian court that a foreign corporation suing a Canadian corporation has to file a substantial security fee. Seven Arts fought that. It tried everything it could to get back to the Central District of California. It was not able to do that. So you're not really relying on the judgment out of the Canadian court for ownership? Yes. Ultimately, ultimately, the Canadian court did issue a judgment, a ruling on summary judgment, establishing that Seven Arts does own the underlying copyrights in the subject motion pictures. Well, was that an actual finding in the litigation? Was that a holding in the case? Yes, Your Honor. The Canadian court expressly made that finding. And you're saying that that bars Paramount's claim? Yes, we do argue that Paramount is issue precluded from re-litigating the ownership claim because it stood in parity with content in CanWest. It was as an indemnity. It had notice of that claim through its indemnity relationship with CanWest and content. And, therefore, it is a decision of a foreign court, but United States courts on principles of comity do recognize decisions of foreign courts, certainly sister courts in Canada, unless there is some problem with due process. Well, can I ask about that? Because my understanding is that the defendants didn't show up. They were in bankruptcy. It was essentially a default ruling. And was Paramount a party to that action? Paramount was not a party to that action. It was not a default ruling, per se. They didn't defend, right? Well, they did defend the initial litigation. They eventually dropped out and did not defend the actual motion for summary judgment in that case. But it was not a default judgment in the sense that they never showed up. I stand corrected. They did not defend. Summary judgment was entered in favor of your client. Correct. And the they wasn't Paramount because Paramount was not a party. They was not Paramount. But Paramount was in privity with those parties. It was indemnified by those parties. And an under-established president, a party that is indemnity with another party, does stand in privity for issue preclusion purposes. I'm going to reserve the remainder of my time. You said indemnity. Unless you have further questions. Explain to me, clear up, who was the indemnitor, who was the indemnity, and what was the indemnity? Yes. Content. So under Paramount's right to distribute these films depends upon first Pan West and then Content having the copyright, right? That it purports to grant their license to Content to distribute. If Pan West or Content loses and it turns out they're wrong, that means it would be understood that Paramount is then infringing the copyright. Because Paramount, Seven Arts copyright, right? If it turns out Seven Arts owns the copyright and not Pan West or Content. And where does the indemnity come in? Does Paramount have an indemnity right against Content and Pan West? That is our understanding. We do not have an indemnity agreement in the record. We made that allegation, and that is something which we would hope to, if it's relevant, to prove at trial. And do you claim that because of that indemnity right, Paramount should have been present in the Canadian action to preserve its indemnity right? It is a privity, right? Parties that are identified by there's a precedent supporting that by a party which is. So they may lose their indemnity, right, but does that mean that the determination of the Canadian court should bind Paramount? Yes, it does. Parties issue preclusion of facts applies not just to parties that were actually in the action, but who also were represented by parties in the action. But that question is not before us today, right? Yeah, this is not the. What was forced today is an order dismissing Seven Arts complaints on the grounds of statute of limitation. We have to figure out when the statute of limitation accrued. Exactly. But before we. . . I'm confident that we'll get to that issue at trial, but. . . We understand. Thank you, counsel. Thank you. Good morning, Your Honor. May it please the Court. Joan Mack for Appelli Paramount Pictures Corporation. Counsel, can I ask you a question? Just right off. . . Here's what bothers me about this case. Opposing counsel's argument in this briefing is that his client filed suit in Canada, and the action here was stayed in California, and that he. . . that it took him a lot longer, basically, that there were discovery problems, that there are all kinds of delays in the Canadian court, and so he's now. . . that his client was basically stuck between a rock and a hard place. He couldn't proceed here until the Canadian action was completed, and so he wound up getting dismissed for failure to prosecute. And what I hear from his briefs is that they were trying hard to prosecute the case. So how do we get around that? First, Your Honor, the seven arts initially filed in the Los Angeles Superior Court. Yes. In 2002, removed to the central district, and Judge Rafiti ruled that the forum selection clause in the contracted issue wasn't forcible. That's how the parties ended up in Canada. That case was not stayed by Judge Rafiti. I understand. Oh, okay. Sorry. And so they proceeded to Canada, and seven arts predecessors filed in Canada in 2003. And I think the best summary of the Canadian action in that timeline can be found in seven arts papers, and it shows clearly, it's in their opening brief, that seven arts caused the delay in Canada. So seven arts never explains two things. Why didn't it sue Paramount in 2003 in Canada? Why didn't it bring Paramount into that case at any point in time prior to the expiration of the statute of limitations? It had until 2008 to do that. And why didn't it move the Canadian case along? The primary reason for delay there, which, again, is established in its own papers, is that the Canadian court ordered seven arts to pay like a bond for filing, and seven arts didn't do it. They fought that. They asked for relief from it and didn't get it. Ultimately they paid it, right? Yes. It took over five years. And then after that, the entire delay as laid out in seven arts papers, seven years, is caused by seven arts. That was what, as the court knows, seven arts returned to the central district and filed another copyright infringement action in 2005. Right. It did not sue Paramount. Right. But it did file it, and that was the case that Judge Collins dismissed in 2008 with prejudice. That dismissal was affirmed by this court because Judge Collins had given seven arts ample time, three years, to show that it was diligently prosecuting the action in Canada, and seven arts did not make that showing to the court. Does that answer your question? Can you tell us what is your view of the impact of the Canadian judgment? It's too late, Your Honor. The Canadian judgment was obtained in 2011. And as I explained to this court, the law in this circuit, it's a natural extension to find that the statute of limitations for seven arts claims of ownership against Paramount expired in 2008. Seven arts then obtained a judgment in 2011 in Canada. Paramount is not a party to that action, as the court has already pointed out. Well, you heard your opposing counsel say that Paramount was in privity. What's your response? Well, there's no factual allegations in the complaint to support a conclusion that Paramount is in privity with the Canwest parties. And it's the Canwest parties that were the defendants in the Canadian action. Seven arts alleges at paragraph 20, quote, as purported assinees or licensees of the Canwest parties, defendants are bound to the summary judgment order by privity. Your Honor, I submit that's a legal conclusion. And it's, you know, it's not entitled to deference under the Supreme Court, you know, Ashcroft v. Iqbal standard. There are no other facts, and frankly, there can't be any to show that Paramount is indemnified by content. And that's what my colleague has argued to the court here today. And if I could, two things I want to just touch briefly on. He's arguing as sort of an equitable indemnity, saying that if Paramount is found to have infringed, then they have an equitable indemnity right against Canwest and content. What's wrong with that? Well, again, there are no facts to support. And although, yes, that might be the case, a right to indemnification isn't. Well, the fact that they're licensees, the mere fact that they're licensees, doesn't that, that's a contract, it's a conveyance of a property interest, doesn't that create an equity by the licensee against the licensor if the licensor's title is infirm? Your Honor, I think that there certainly can be a case that Paramount would make for equitable indemnification from content or any remaining Canwest parties if it came to that. Paramount has never been sued before in this decades-long litigation. And there has been no finding against Paramount. Paramount has had no reason to seek indemnification. Yes, Your Honor. So you're saying the statute of limitations cuts off 7-R's rights against Paramount. Paramount may have the issue precluded, but that's not before us. Yes, Your Honor. Okay. What is before the Court, and it's before the Court on 12b-6, which I want to just say is absolutely appropriate for the Court to have ruled on the statute of limitations defense on a 12b-6 motion. Because the District Court had before it the complaint, the exhibit to the complaint, which are the three letters written by 7-R to Paramount in 2005, and also a lot of material that was judicially noticed. There were requests for a judicial notice filed with Paramount's motion to dismiss, and also with 7-R's application for a preliminary injunction. On that application, 7-R filed a request for judicial notice, as did Paramount, as did Content Media, the other canless assignee that was sued along with Paramount for copyright infringement in this case. So under the law in this circuit, it's, I think as this Court ruled in Daniels Hall versus National Education Association, a motion to dismiss may be granted on where the allegations in the complaint are contradicted by the matters properly subject to judicial notice. But counsel, the law in this circuit doesn't really answer the ultimate problem we've got to figure out, which is when did the statute of limitations accrue? I think you'll concede that, and I hope. And you're asking us to make new law in this case, and I think pointing us to the Sixth Circuit in particular, if I'm not mistaken, what is your answer to opposing counsel's point that our existing law in Zuhl at least suggests that had there been an infringement claim made in that case that there would have been, perhaps it wouldn't have been barred by the statute of limitations? Yes, Your Honor. There was an infringement claim in Zuhl, and as Zuhl correctly held, that there couldn't be an infringement claim between co-authors. And so Zuhl was a case with co-authors, and so this Court didn't have an opportunity to rule on the exact facts here. But this Court in Wells v. Turner Entertainment, where their claim is Beecher's Wells, was asserting a claim for sole ownership of the video rights in the motion picture Citizen Kane. And here that Court said that, if I can get my quote, quote, a claim for copyright ownership is barred three years from the plain and express repudiation of copyright ownership. Now, in that case, it was found that there hadn't been a plain and express repudiation, and so the ownership claim wasn't barred. But the statement of the law by the Ninth Circuit there is exactly what needs to be applied here. And let me explain, if I may, why this is absolutely a dispute over ownership. Paramount Pictures has been distributing and otherwise exploiting the motion pictures at issue for over a decade. Seven Arts has known about that exploitation since day one. Paramount owns the rights to distribute and exploit the films. Seven Arts is now claiming that it owns those rights. Whether we own them as a licensee or not doesn't make a difference. Paramount owns those rights. The copyright registrations that are in the record before this Court show that the rules have been in place since day one. The other two motion pictures, the copyrights are registered to Paramount Classics. These are the entities that released the films on their release dates back in 2000, 2001, and 2002. And Paramount has relied on its ownership of the licensee, through license, of its rights to release and exploit these pictures since that time. So I think that it's, again, under the law in this circuit, it's clear that this is an ownership dispute. Isn't there a requirement in some of the cases that for the statute of limitations to be triggered, the person relying on the statute of limitations has to be in a close relationship with the person who is being, who is suing? And is there any close relationship between Seven Arts and Paramount? Yes, there is, Your Honor. I think that it's, again, very evident in the record and laid out in an affidavit of Peter Hoffman, who was the principal of all of the Seven Arts predecessors' companies and is the principal of Seven Arts. And if I may, I'll find my reference to that declaration. But in it, he ‑‑ This would be important if we go with the Sixth Circuit's rendition, correct? Yes. And that is the holding in the ‑‑ but it's in the record, Volume 5 of the supplemental excerpt of the record, starting at page 1294. And in his affidavit, starting with the picture Rules of Engagement, Mr. Hoffman states that it was theatrically released by Paramount in the United States on March 31, 2000, with the presentation credit Paramount Pictures and Seven Arts Presents. And that's at the end of his explanation of the contractual agreements between Paramount and Seven Arts predecessors, which were negotiated by Mr. Hoffman with Paramount. Similarly, for the other two pictures at issue ‑‑ I suppose the Statute of Limitations runs like it normally does when a plaintiff knows or should have known that his rights are being invaded. Why does the release date and why does his affidavit show that Seven Arts knew or should have known of Paramount's release? I'm talking about the public release of the Motion Pictures. Right. Because Seven Arts was involved in the early financing agreements and distribution agreements and was a participant in the early negotiations over the making of these pictures. And that is alleged in the complaint? Yes. In Mr. Hoffman's declaration, it's alleged in each of the preliminary injunction applications that Seven Arts filed in the district court. And so, therefore, their involvement in the financing of the movies indicates that they had a close relationship with Paramount for the purposes of commencing the Statute of Limitations running. Yes, Your Honor. I would argue that it did start as early as 2002 when Seven Arts first filed a lawsuit claiming co‑ownership of the rights in the Motion Pictures. That was the L.A. Superior Court. You're relying on the Sixth Circuit case in Ritchie, but your brief also mentions the Kwan case out of the Second Circuit. Is there any significant difference between those two cases? Yes, Your Honor. The Kwan case held that it was a natural extension of when an ownership claim is barred that the infringement claim must also be barred. And the holding of Kwan is a time‑barred ownership claim will bar a claim for copyright infringement where there's a genuine dispute as to the plaintiff's ownership of the copyright. And the reasoning for Kwan was simple. To have a claim for copyright infringement, the plaintiff must show first ownership of a valid copyright and, second, that that copyright was infringed. If they can't show ownership, there's no copyright to infringe. The Sixth Circuit, which is different, there the court explicitly extended the holding in Zuhl, which covered, again, co‑authors, extended that to parties in a close relationship such as those who transfer copyright ownership via contract. So very similar to the facts here. That was the Ritchie case. It's a singer‑songwriter now known as Kid Rock and a series of contracts. So you're relying on the Ritchie case then for the close relationship point? Your Honor, I think that we would rely on Kwan or Ritchie. Both are natural extensions of this Court's holding in Zuhl that say when the ownership claim is barred, the copyright infringement claim must also be barred. And I would submit that that is the holding, affirming the dismissal of the complaint here is what actually promotes the proper functioning of the copyright system. Counsel, what is your response to the rule in Kwan is quite straightforward. What is your response to opposing counsel's point, which is the application of it can be very complicated when there's more than one defendant or several defendants when rights get, as you call them, sliced and diced. What happens then? Well, in this case, I think that it was Seven Arts' choice to dismiss content voluntarily and pursue them in the U.K. It could have kept all the parties together. But regardless, Seven Arts here is claiming it owns the rights that Paramount owns. So I don't see the complications that counsel anticipates. In fact, I view it the other way. Well, maybe not in your case, but you're asking us to adopt a new rule. That's my point, right? You're asking us to look to the Sixth Circuit or the Second Circuit. And it seems to me that it's not difficult to imagine some other fact patterns beyond this case that could get pretty sticky. Did you want to have an opportunity to respond to that? Yes, Your Honor. I don't believe so. If a plaintiff waits over ten years to enforce copyright ownership rights, and that is barred by the statute of limitations, I don't see that that creates complications. In fact, on the other hand, it would allow a party such as Paramount that has been distributing and otherwise exploiting these motion pictures for over a decade in theatrical home video television media. While Seven Arts knew of that exploitation since day one, the proper result is a claim is barred, regardless of what other foreign judgments Seven Arts might be able to obtain. And that all of the other downstream licensees from Paramount and many people involved in the exploitation of these three motion pictures are best protected by an enforcement of the statute of limitations in the Copyright Act. In fact, I think affirming dismissal of Seven Arts' claim for infringement will promote the principles of repose that are integral to a properly functioning copyright market. Thank you. Counsel, as I understand it, your argument is that the repudiation in this case occurred in 2002, or are you suggesting it might have gone back to 2000? In 2000, when the motion pictures were released, Seven Arts was certainly on notice of Paramount's claim to ownership of the rights to distribute the motion pictures. Right, but when did the repudiation occur that you rely on? I think the most clear one and the latest would be 2005, Your Honor. In the three letters that are attached to the complaint is Exhibit B. In there, Seven Arts wrote to Paramount claiming sole ownership of the rights in the motion pictures. There's clear authority that says a claim of sole ownership will start the clock running. In the third letter written in May of 2005, Seven Arts expresses its outrage over Paramount's rejection of its claim to ownership of the rights in the pictures. That started the clock at the very latest in May of 2008, and therefore it expired in May of 2005 was the letter. So the statute would have run in May of 2008. 2008. If it's, let's see, the statute of limitations. I think you've exceeded your time. Thank you very much. All right. Thank you, Your Honor. All right. The clock is confusing there. Yes, Your Honor. The express repudiation of ownership rule exception has quite drastic consequences. It means that a copyright owner, an author, is forever unable to enforce the copyright. Unlike the continuing infringements rule, which bars actions for infringements that are continuing infringements that precede by three years the claim, but do allow the author to still enforce copyrights in the future in continuing infringements. This court should be quite wary of expanding that exception to include cases such as this, where the rival claimant, the party that is reputed in the ownership, doesn't assert that it owns the copyright to the exclusion of the plaintiff. Contrary to what Paramount counsel has suggested, Paramount does not stand in that position. This case is not analogous to either Ritchie or Kwan. In fact, Paramount has filed an action for interpleader in the district court against Seven Arts and Content Media. It has petitioned the district court to inform it who between the rival claimants, Seven Arts or Content Media, owns the copyrights, and thus to whom Paramount must pay royalties for distribution of the motion pictures. So Paramount here stands as a neutral stakeholder. And in fact, I would say, this is not a statute of limitations argument, but certainly the equities in many ways go the other way. Paramount, if Paramount wanted repose, not just from continuing infringement claims, but also in the past, but also currently and in the future, it was free to file an action for interpleader in 2005, when it received a demand from Seven Arts that it was, Seven Arts was demanding, that Paramount actually pay Seven Arts and not Content. Our interpleader statutes and rules are really quite liberal, even unlike an actual declaratory judgment. There's no requirement even that there be an actual case in controversy. Rather, a stakeholder need merely have a good faith belief that it is going to be put in the middle of a controversy, in order to file a claim for interpleader. So I would suggest that in cases like this, parties who find themselves in a position like Paramount have a ready-made procedure to gain the repose that they may like to have. Again, repose not only against old claim for infringement, but also against future claims and existing claims for continuing infringement. They can file an action for interpleader. So certainly, given that and given the... Let me just say one more thing, if I have time. You don't have time. I don't have time. Okay. Thank you very much. All right. Thank you. The case of Seven Arts filmed Entertainment Limited and Paramount Pictures is submitted. And I thank counsel for the argument.
judges: O'scannlain, Bea, Christen